IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

ROBERT W. CLOUGH, II on behalf of  :
himself and others similarly situated,  :
: 
    Plaintiff,  :  Case No.
:
v.  :  CLASS ACTION COMPLAINT
:
:
REVENUE FRONTIER, LLC and  :
NATIONAL TAX EXPERTS INC.  :
:
    Defendants.  :
_____/

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Robert W. Clough, II ("Mr. Clough" or "Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, National Tax Experts Inc. ("National Tax Experts") hired Revenue Frontier to originate new customers, and Revenue Frontier initiated an automated telemarketing call to a cellular telephone number Mr. Clough had registered on the National Do Not Call Registry for the purposes of advertising National Tax Experts goods and services, using an automated dialing system, which is prohibited by the TCPA.

3. The Plaintiff never consented to receive the call, which was placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on

behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

4. A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff Robert W. Clough, II is a resident of the state of New Hampshire and this District.

6. Defendant National Tax Experts Inc. is a California corporation and conducts business in this District.

7. Defendant Revenue Frontier, LLC is a company with its principal place of business in Santa Monica, CA. Revenue Frontier engages in telemarketing nationwide, including into this District.

## Jurisdiction & Venue

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the telemarketing call to the Plaintiff was placed into this District.

## The Telephone Consumer Protection Act

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

2

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

12. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls and Text Messages

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

3

15. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

17. A text message is a "call" for purposes of the TCPA.

18. Unlike more conventional advertisements mobile text spam can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

### Factual Allegations

19. National Tax Experts is a company that tax relief services.

20. To generate new clients, National Tax Experts relies on telemarketing.

21. However, National Tax Experts' contact with the potential new customers is limited, and the telemarketing is conducted by third parties.

22. One of National Tax Experts new strategies for telemarketing involve hiring third parties that make use of an automatic telephone dialing system ("ATDS") to solicit potential customers through text messages.

23. National Tax Experts engages this use of this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

24. Through this method, National Tax Experts shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Call to Mr. Clough

25. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

26. Mr. Clough placed his cellular telephone number, 603-731-XXXX on the National Do Not Call Registry in February of 2008.

27. Despite taking the affirmative step of registering his telephone number on the National Do Not Call Registry, Revenue Frontier placed an automated text message to him on June 14, 2017.

28. The text message stated, "Hi, Did you ever take care of your IRS/State Tax Debt? I can eliminate back taxes, penalties, liens, levies…Call us for help".

29. The Caller ID that sent the automated text message was (888) 309-8543.

30. Other individuals have complained about being contacted by that number. In fact, two individuals previously indicated that they received spam contacts from that number, with one complaint being filed on the same day that the Plaintiff received his automated text message.

*See* https://checkwhocalled.com/phone-number/1-888-309-8543 (Last Visited September 6, 2017).

31. Other websites have also compiled complaints about telemarketing contact from this Caller ID number. *See* http://callername.com/8883098543 (Last Visited September 6, 2017) (aggregating complaints about "unsafe" calls from that Caller ID number.

32. The prior complaints, lack of a specific addressee for the text, generic nature of the text message, as well as the geographic distance between the sender and the Plaintiff, consistent with a nationwide telemarketing campaign, indicates that the call was made with an ATDS.

33. To identify the calling party, the Plaintiff called the number back that sent him the text message.

34. When the Plaintiff finally connected with a live individual, he was solicited for an for National Tax Experts services.

35. Confirming that the call was made in an attempt to solicit National Tax Experts services, the Plaintiff received a proposed contract in an e-mail following the call, which is attached as Exhibit 1.

36. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

37. Moreover, these calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

**National Tax Experts' Liability for the Telemarketing Call**

38. National Tax Experts is a "person," as defined by 47 U.S.C. § 153(39).

39. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

40. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message calls sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

41. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as National Tax Experts may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

42. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

43. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

44. National Tax Experts is legally responsible for ensuring that Revenue Frontier complied with the TCPA, even if National Tax Experts did not itself make the calls.

45. National Tax Experts knowingly and actively accepted business that originated through the illegal telemarketing calls from Revenue Frontier.

46. By hiring a company to make calls on its behalf, National Tax Experts "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

47. Similarly, by accepting these contacts, the company that Revenue Frontier hired "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of National Tax Experts, as described in the Restatement (Third) of Agency. As such, Revenue Frontier is an agent of National Tax Experts.

48. Moreover, National Tax Experts maintained interim control over Revenue Frontier's actions.

49. For example, National Tax Experts had absolute control over whether, and under what circumstances, it would accept a customer.

50. Furthermore, National Tax Experts had day-to-day control over Revenue Frontier's actions, including the ability to prohibit it from using an ATDS to contact potential customers of National Tax Experts. National Tax Experts failed to make such an instruction to Revenue Frontier, and as a result, is liable for Revenue Frontier's conduct.

51. National Tax Experts also gave interim instructions to Revenue Frontier by providing the volume of calling and leads it would purchase.

52. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

53. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

54. The class of persons Plaintiff proposes to represent is tentatively defined as:

> All persons within the United States: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Defendants' products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

55. Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

56. The class as defined above is identifiable through phone records and phone number databases.

9

57. The potential class members number at least in the thousands, since automated and pre-recorded telemarketing campaigns make calls to hundreds or thousands of individual a day. Individual joinder of these persons is impracticable.

58. Plaintiff is a member of the proposed class.

59. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    a. Whether Defendants violated the TCPA by using automated telemarketing to call cellular telephones;

    b. Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

    c. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

60. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

61. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

62. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

63. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

64. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

65. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Automated Calling provisions

66. Plaintiff Clough incorporates the allegations from all previous paragraphs as if fully set forth herein.

67. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

68. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and

every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

69. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

70. The Defendants' violations were negligent and/or knowing.

### Relief Sought

For himself and all class members, Plaintiff request the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendants and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendants and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff request a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By its attorneys

/s/ *Roger B. Phillips*
Roger B. Phillips, (Bar. No.2018 )
Phillips Law Office, PLLC
104 Pleasant Street
Concord, NH 03301
(603) 225-2767 (ph)
(603) 226-3581 (fax)
roger@phillipslawoffice.com

Edward A. Broderick
Anthony I. Paronich
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
(508) 221-1510
anthony@broderick-law.com
*Subject to Pro Hac Vice*

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com
*Subject to Pro Hac Vice*

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
mmccue@massattorneys.net
*Subject to Pro Hac Vice*

13