**Robert W. Clough, II**
**on behalf of himself and**
**other similarly situated**

       Case No. 17-cv-411-PB
  v.             Opinion No. 2019 DNH 096

**Revenue Frontier, LLC et al.**


## MEMORANDUM AND ORDER

Robert W. Clough, II, filed this action on behalf of himself and similarly situated individuals under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, against Revenue Frontier, LLC, Supreme Data Connections, LLC, and William Adomanis. The complaint alleges that the defendants violated the TCPA by sending unsolicited text messages advertising the services of National Tax Experts, Inc., to Clough and other recipients using an automatic telephone dialing system. Clough has moved to certify a plaintiff class and appoint his attorneys as class counsel. The defendants object, arguing that Clough lacks Article III standing and cannot meet the requirements of Federal Rule of Civil Procedure 23.

### I. BACKGROUND

On June 14, 2017, Clough received a text message on his cellular telephone. The message stated, "Hi, Did you ever take care of your IRS/State Tax Debt? I can eliminate back taxes,

penalties, liens, levies. . . Call us for help." Am. Compl.

¶ 30, Doc. No. 88. Although Clough did not owe any back federal

or state taxes, he called the number from which the text was

sent, provided a fake name, and feigned interest in the

solicited services to identify the entity that called him. He

learned that the text message was a solicitation for National

Tax Experts, Inc. ("NTE").

    NTE, however, did not send the text message itself.

Instead, it hired a company called Airtime Media LLC to promote

NTE's tax relief services and generate inbound customer calls.

Airtime Media, in turn, hired Revenue Frontier as a lead

generator for the NTE campaign. Revenue Frontier then engaged

W4, LLC to promote NTE's services on behalf of Revenue Frontier.

W4 is an affiliate network that has agreements with independent

contractors known as "affiliates" or "publishers" who use

various methods to promote products and services and to

encourage customers to visit websites or call telephone numbers

to purchase products or services. In this case, W4 arranged for

its affiliate, U.E.G. Inc., to promote NTE's services via text

messages.[1] U.E.G. then hired Supreme Data Connections, LLC

("Supreme Data") to send text messages for the NTE campaign.

---

[1]    W4 also hired another affiliate, Fluent, Inc., to send text
messages for the NTE campaign. The parties agree that the
messages Fluent sent are not at issue in this case.

Defendant Adomanis is Supreme Data's manager and registered agent.

During the discovery process, Supreme Data produced a list of text messages it sent for the NTE campaign. Clough's expert witness Anya Verkhovskaya analyzed the list and concluded that 18,937 wireless numbers received 18,971 texts messages. <u>See</u> Pl.'s Ex. 13. ¶ 44, Doc. No. 91-14. Another expert witness, Randall Snyder, has opined that the platform utilized to send the texts (the SDC Messaging Application employing the Sendroid software) qualifies as an automatic telephone dialing system ("ATDS"). <u>See</u> Pl.'s Ex. 15 ¶ 61, Doc. No. 91-16.

Clough alleges that he did not consent to the receipt of any text message promoting tax debt relief services. The defendants have yet to produce any evidence that calls Clough's allegation into question. Nor have the defendants identified any evidence that the other recipients of the 18,971 text messages consented to receive them.

## II. CLASS CERTIFICATION STANDARD

Federal Rule of Civil Procedure 23 sets out the requirements for class certification. The proposed class representative must demonstrate that each of the rule's requirements has been satisfied. Makuc v. Am. Honda Motor Co., 835 F.2d 389, 394 (1st Cir. 1987). The class certification inquiry has three steps. First, the class representative must

show that the proposed class satisfies all four of Rule 23(a)'s threshold requirements, which are commonly known as numerosity, commonality, typicality, and adequacy. See Fed. R. Civ. P. 23(a)(1)-(4); see also Berenson v. Nat'l Fin. Servs. LLC, 485 F.3d 35, 38 (1st Cir. 2007). Second, the class representative must demonstrate that the lawsuit may be maintained as a class action under one of the three subsections of Rule 23(b), which allow class actions where: (1) separate actions by or against individual class members would risk imposing inconsistent obligations on the party opposing the class; (2) "the party opposing the class has acted or refused to act on grounds that apply generally to the class" and injunctive relief is suitable; or (3) common questions of law or fact predominate and a class action would be the superior method of proceeding. Fed. R. Civ. P. 23(b). Third, the representative must show that "a putative class [is] ascertainable with reference to objective criteria." In re Nexium Antitrust Litig., 777 F.3d 9, 19 (1st Cir. 2015) (quoting William B. Rubenstein, Newberg on Class Actions §§ 3:1, 3:3 (5th ed. 2013)).

Although a court should not decide the merits of a case at the certification stage, Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974), a motion to certify "generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" Coopers &

Lybrand v. Livesay, 437 U.S. 463, 469 (1978) (quoting Mercantile Nat'l Bank v. Langdeau, 371 U.S. 555, 558 (1963)).  The First Circuit has held that "[a] district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class."  Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003).  In doing so, a court may resolve disputed factual issues that arise in the course of class certification by considering materials beyond the pleadings.  In re PolyMedica Corp. Sec. Litig., 432 F.3d 1, 6 (1st Cir. 2005).

### III. ANALYSIS

Clough proposes to certify the following class:

> (1) All persons in the United States who are the users or subscribers of the approximately 18,937 cellular telephones identified in Anya Verkovshkaya's report (2) to which cellular telephone numbers a text message was sent [(3)] using the SDC Messaging Application, employing the Sendroid software [(4)] within four years of the filing of the complaint.

Doc. No. 91 at 1.  He asserts that the proposed class satisfies all of the Rule 23(a) prerequisites and is eligible for certification under Rule 23(b)(3).  The defendants object to class certification on the grounds that (1) Clough and other proposed class members lack standing to sue; and (2) the proposed class does not satisfy several of Rule 23's requirements.  I address the defendants' standing argument first because a court lacks subject matter jurisdiction unless the

5

plaintiffs have Article III standing.  See Pollard v. Law Office
of Mandy L. Spaulding, 766 F.3d 98, 101 (1st Cir. 2014).

###### A.    Article III Standing

The defendants argue that Clough and other members of the
proposed class lack standing to sue because they did not suffer
a concrete injury.   The defendants are wrong.

Standing "limits the category of litigants empowered to
maintain a lawsuit in federal court to seek redress for a legal
wrong," and "requires a concrete injury even in the context of a
statutory violation."  Spokeo, Inc. v. Robins, 136 S. Ct. 1540,
1547, 1549 (2016).  "When one sues under a statute alleging the
very injury the statute is intended to prevent, and the injury
has a close relationship to a harm traditionally providing a
basis for a lawsuit in English or American courts, a concrete
injury has been pleaded."  Susinno v. Work Out World Inc., 862
F.3d 346, 351 (3d Cir. 2017) (internal quotation marks and
alterations omitted); see Spokeo, 136 S. Ct. at 1549.

Every circuit court that has considered Article III
standing in the context of a TCPA claim has held that the
recipient of an unsolicited call[2] has suffered a concrete harm.

---

[2]    The TCPA's prohibition against auto dialed calls applies to
both voice calls and text messages.   See Murphy v. DCI
Biologicals Orlando, LLC, 797 F.3d 1302, 1305 (11th Cir. 2015)
(citing In re Rules & Regulations Implementing the Tel. Consumer
Prot. Act of 1991, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003)).

See Melito v. Experian Mktg. Sols., Inc., 923 F.3d 85, 93 (2d Cir. 2019); Susinno, 862 F.3d at 351-52; Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1043 (9th Cir. 2017); see also Imhoff Inv., L.L.C. v. Alfoccino, Inc., 792 F.3d 627, 633 (6th Cir. 2015) (TCPA plaintiff who received unwanted fax transmission suffered concrete injury in form of "a violation of the statutorily-created right to have one's phone line and fax machine free of the transmission of unsolicited advertisements"); Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245, 1251-52 (11th Cir. 2015) (same). Unsolicited calls, by their nature, are a nuisance and an invasion of privacy that the statute aimed to prevent. Susinno, 862 F.3d at 351; Van Patten, 847 F.3d at 1043. In identifying this harm, Congress "sought to protect the same interests implicated in the traditional common law cause of action" for intrusion upon seclusion. Susinno, 862 F.3d at 351-52; see Van Patten, 847 F.3d at 1043 (TCPA claims closely relate to traditional claims for "invasions of privacy, intrusion upon seclusion, and nuisance [which] have long been heard by American courts"). I am persuaded by the reasoning that underlies these decisions. Accordingly, to establish standing, a plaintiff alleging a violation under the TCPA "need not allege any additional harm beyond the one Congress has identified." Spokeo, 136 S. Ct. at 1549.

The complaint alleges that Clough and other proposed class members each received an unsolicited text message.  The inherent nuisance and invasion of privacy resulting from that unsolicited contact is sufficient to satisfy Article III standing.[3]

**B.  Ascertainability**

A proposed class must be sufficiently "defined" or "ascertainable" based on objective criteria.  See Matamoros v. Starbucks Corp., 699 F.3d 129, 139 (1st Cir. 2012).  In other words, "it must be administratively feasible to determine whether a particular individual is a member." In re Dial Complete Mktg. & Sales Practices Litig., 312 F.R.D. 36, 49 (D.N.H. 2015) (internal quotation marks omitted).

Here, objective criteria determine the parameters of the class: all wireless users or subscribers who were sent a text message by Supreme Data as part of the NTE campaign.  Supreme Data produced a list of 18,937 wireless numbers that received the texts, which can be used to identify the individual class members.  Thus, the ascertainability requirement has been met.

---

[3]    For the same reason, I reject the defendants' argument that the necessity for individualized inquiries concerning the harm suffered by each proposed class member defeats the predominance requirement of Rule 23(b)(3).

### C. Requirements of Rule 23(a)

Clough has also satisfied each of the requirements set forth in Rule 23(a).

#### 1. Numerosity

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009) (quoting Stewart v. Abraham, 275 F.3d 220, 226–27 (3d Cir. 2001)). The proposed class is comprised of 18,937 wireless subscribers or users, which is more than adequate to satisfy the numerosity requirement.

#### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[A] single question of law or fact common to the members of the class will satisfy the commonality requirement." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 369 (2011) (internal quotation marks omitted). A question is common to the class if it is "capable of classwide resolution — which means that the determination of its truth or falsity will resolve an issue that

is central to the validity of each one of the claims in one stroke." Id. at 350.

Common questions in this case that are capable of classwide resolution include: (1) whether the text messages were sent to cellular telephone numbers; (2) whether the equipment used to send the text messages is an ATDS; (3) whether Revenue Frontier is vicariously liable for the text messages; and (4) whether the defendants willfully or knowingly violated the TCPA such that the court may treble the statutory damages of $500 per claim. These questions are central to a TCPA claim, see 47 U.S.C. § 227(b)(1)(A), and a class action has the capacity "to generate common answers apt to drive the resolution of the litigation." See Dukes, 564 U.S. at 350 (internal quotation marks omitted).

The defendants contend that the commonality requirement cannot be satisfied because "no information about the text messages' contents has been produced at all other than the message Clough received." Doc. No. 97 at 10. The defendants suggest that unless each class member received an identical text message, their claims cannot be common. I disagree. An unsolicited text message sent to a cellular number using an ATDS violates the TCPA regardless of its contents. See 47 U.S.C. § 227(b)(1)(A). What matters for commonality purposes is that all class members received a message from the same entity (Supreme Data) sent as part of the same campaign (tax debt

relief promotional campaign on behalf of NTE).  That the
contents of those messages may have varied is irrelevant for
purposes of TCPA liability.[4]

### 3.    Typicality

Rule 23(a)'s typicality prong requires that "the claims or
defenses of the representative parties [be] typical of the
claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).
The claims of a class representative are "typical" when they
"arise from the same event or practice or course of conduct that
gives rise to the claims of other class members, and are based
on the same legal theory."  Calderon, 570 F.3d at 460 (internal
quotation marks and alterations omitted).  By contrast, a class
representative's claims are not typical "if they may be subject
to unique defenses that would divert attention from the common
claims of the class, or if factual differences predominate to
the extent where the court must make highly fact-specific or
individualized determinations in order to establish a
defendant's liability to each class member."  In re Tyco Int'l,
Ltd., 2006 DNH 091, 2006 WL 2349338, at *2 (D.N.H. Aug. 15,
2006) (internal quotation marks and citations omitted).

---

[4]    To the extent the defendants maintain that the contents of
the texts may be relevant to the issue of consent, I address
that argument in analyzing Rule 23(b)(3)'s predominance
requirement.

Clough's claim is based on the same legal theory that members of the putative class will use, namely that the defendants violated the TCPA by sending an unauthorized auto-dialed text message to a wireless number. In addition, the class members' claims arise from the same allegedly actionable course of conduct for which Clough is seeking to recover, because the complaint alleges that all text messages were sent as part of the same advertising campaign, using the same dialing software. Finally, there are no significant factual differences requiring individualized determinations. The typicality requirement is therefore satisfied.

### 4. Adequacy

The adequacy requirement is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement has two prongs. First, a plaintiff must demonstrate "that the interests of the representative party will not conflict with the interests of any of the class members." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985). Second, a plaintiff must show "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." Id.

The defendants first argue that Clough is not an adequate class representative because he lacks credibility. They

12

maintain that Clough: (1) falsely stated under oath in his interrogatory responses that he incurred charges for the text message when in fact he had an unlimited text messaging plan; (2) made false statements and feigned interest in NTE's services when he called the number that sent him the text message; and (3) misrepresented his identity to other telemarketers. These instances of untruthful behavior purportedly damage Clough's credibility, which the defendants portray as a "central issue" in the case. See Doc. No. 97 at 4.

Courts may consider a proposed representative's honesty and trustworthiness in judging his adequacy. CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d 721, 727 (7th Cir. 2011); Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998). The general rule, however, is that attacks on a representative's credibility can render him inadequate only when they "are so sharp as to jeopardize the interests of absent class members." Gooch v. Life Inv'rs Ins. Co. of Am., 672 F.3d 402, 431 (6th Cir. 2012) (internal quotation marks omitted); accord Lacy v. Cook Cty., 897 F.3d 847, 866–67 (7th Cir. 2018). Courts applying this rule have found that the representative's credibility must be dubious with respect to substantial issues directly relevant to the claims at issue. See, e.g., Lacy, 897 F.3d at 866-67 (affirming district court's determination that class representatives were adequate where "any weaknesses in

[their] integrity did not relate to a central element of the litigation"); CE Design, 637 F.3d at 727-28 (remanding for district court to reconsider representative's adequacy in action alleging violation of TCPA where record raised serious doubts concerning truthfulness of its principal on key question of consent to receive faxed advertisements about which it now complained); Savino, 164 F.3d at 87 (affirming district court's determination that lack of credibility rendered representative inadequate where he offered differing accounts about "letters that form[ed] the very basis for his lawsuit"); Kline v. Wolf, 702 F.2d 400, 403 (2d Cir. 1983) (affirming finding of inadequacy where "plaintiffs' testimony on an issue critical to one of their two causes of action was subject to sharp attack").

Although not trivial, Clough's credibility issues do not endanger the class because they are not directly relevant to his TCPA claim. Clough need not even testify to prove his claim. Even if he does testify, whether he incurred charges for the text message is not central to his claim. As I explained above, Clough's injury stems from the invasion of his privacy that resulted from the receipt of an unsolicited text message rather than because he incurred a charge when the message was sent. Similarly, that he made misrepresentations when talking to NTE and other telemarketers after receiving the text message is not relevant to his contention that the defendants sent him the text

message without his prior consent.  In short, "any weaknesses in [his] integrity d[o] not relate to a central element of the litigation" and thus do not render him an inadequate class representative.  Lacy, 897 F.3d at 867.

The defendants challenge Clough's adequacy on three other grounds.  None of their arguments is persuasive.  First, the defendants suggest that Clough "might not appear at trial if called," citing his deposition testimony.  Doc. No. 97 at 17.  A fair reading of his testimony does not support the defendants' characterization.  Clough testified that his work schedule might prevent him from attending the entirety of a two-week trial, not that he would fail to attend when called to testify.  See Doc. No. 97-2 at 20-21.  Second, the defendants accuse Clough of seeking to "feather[] his own nest," citing his "history as a TCPA complainant."  Doc. No. 97 at 18.  This does not create a conflict of interest between Clough and other class members. See CE Design, 637 F.3d at 724 ("it's not unlawful to be a professional class action plaintiff"); Murray v. GMAC Mortg. Corp., 434 F.3d 948, 954 (7th Cir. 2006) ("Nothing about the frequency of Murray's litigation implies that she is less suited to represent others than is a person who received and sued on but a single offer.").

Finally, the defendants argue that Clough's relationship with Alex Washkowitz, one of his attorneys in this case, renders

Clough an inadequate class representative.  The two men are co-workers who have an arrangement where, each time Clough receives a telemarketing call or text, he informs Washkowitz, who then finds responsible parties to target in demand letters and lawsuits.  Although significant business or personal ties between a representative and counsel may cast doubt on the representative's ability to put the interests of the class above his counsel's interests, the record does not support the defendants' contention that the relationship here rises to that level.  Cf. London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1255 (11th Cir. 2003) ("combined with their close friendship, the former financial relationship between [representative] and [class counsel] creates a potential conflict of interest"); Susman v. Lincoln Am. Corp., 561 F.2d 86, 95 (7th Cir. 1977) (representative whose brother was class counsel found inadequate because of "the possibility that one so situated will become more interested in maximizing the 'return' to his counsel than in aggressively presenting the proposed class' action") (internal quotation marks omitted); Gordon v. Caribbean Cruise Line, Inc., No. 14-cv-5848, 2019 WL 498937, at *9 (N.D. Ill. Feb. 8, 2019) (finding representative, who was lawyer by trade, inadequate where he and class counsel jointly represented class action plaintiffs in multiple matters, shared office space,

receptionist, and fax machine, and their families socialized together).

In sum, none of the defendants' attacks on Clough's adequacy to represent the interests of the class have merit. Based on the transcript of his deposition, I am satisfied that Clough is sufficiently involved in litigating this case and cognizant of the claims and issues to serve as the class representative.  See In re Tyco, 2006 WL 2349338, at *2 ("[I]ndividuals should not serve as class representatives if they possess 'so little knowledge of and involvement in the class action that they [are] unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'") (quoting Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 727 (11th Cir. 1987)).

The defendants also argue that the four law firms representing Clough are not adequate to serve as class counsel. Their principal argument is that Clough's attorneys have not been diligent in prosecuting the case, citing their failure to take depositions as an example.  The discovery period is still open, however, and I have no reason to doubt Clough's counsel's contention that they will diligently pursue all necessary discovery in the remaining time.  Accordingly, I grant their request to serve as class counsel.

**D.  Requirements of Rule 23(b)(3)**

In analyzing the predominance and superiority requirements of Rule 23(b)(3), the First Circuit has instructed that the "class certification prerequisites should be construed in light of the underlying objectives of class actions." Smilow, 323 F.3d at 41. "The core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation." Id. I agree with Clough that questions common to the class predominate and that a class action is the superior method of resolving this dispute.

**1.  Predominance**

For a court to certify a class pursuant to Rule 23(b)(3), the rule "requires merely that common issues predominate, not that all issues be common to the class." Smilow, 323 F.3d at 39. The rule "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible of classwide proof." In re Nexium, 777 F.3d at 21 (quoting Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 469 (2013)). Instead, the inquiry is "whether there is 'reason to think that [individualized] questions will overwhelm common ones and render class certification inappropriate." Id. (quoting Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 276 (2014)).

Here, the common issues as to both liability and damages discussed above predominate over any questions affecting only individual class members.  In fact, every element of the class's TCPA claim is susceptible to classwide proof.  See 47 U.S.C. § 227(b)(1)(A).  All class members received text messages sent by the same entity, using the same dialing software, as part of the same advertising campaign.  The amount of each class member's damages does not require individualized determination, given that the complaint seeks statutory damages of $500 per violation, which may be trebled if the defendants acted "willfully or knowingly."  See id. § 227(b)(3).

Nor does the possibility that the defendants may assert a consent defense preclude a finding of predominance.  "Express consent is not an element of a [TCPA] plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof."  Van Patten, 847 F.3d at 1044; see Latner v. Mount Sinai Health Sys., Inc, 879 F.3d 52, 54 (2d Cir. 2018); Blow v. Bijora, Inc., 855 F.3d 793, 803 (7th Cir. 2017). Although courts should consider affirmative defenses in making class certification decisions, "[c]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members."  Smilow, 323 F.3d at 39.

The defendants produced no evidence of consent for any proposed class member in response to Clough's discovery requests. To the extent the defendants suggest that the contents of the text messages are relevant because they may show that some class members provided prior consent, such "speculation and surmise [cannot] tip the decisional scales in a class certification ruling." Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 298 (1st Cir. 2000). Unless a defendant points to evidence of consent, courts do not presume that resolving the issue requires individualized inquiries. See Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1042 (9th Cir. 2012); Bee, Denning, Inc. v. Capital All. Grp., 310 F.R.D. 614, 629 (S.D. Cal. 2015); Kristensen v. Credit Payment Servs., 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014). In any event, if evidence later shows that "an affirmative defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms. For example, it can place class members with potentially barred claims in a separate subclass, or exclude them from the class altogether." Smilow, 323 F.3d at 39-40 (citations omitted).

## 2. Superiority

Rule 23(b)(3) provides four non-exhaustive factors that are relevant to the superiority inquiry: (1) "the class members' interest in individually controlling the prosecution or defense

of separate actions;" (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members;" (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

All four non-exclusive factors point to a finding that a class action is the superior method for adjudicating this case. It does not appear that individual litigation has been initiated to adjudicate these claims, and given that the statutory damages may not exceed $1,500 per claim, "individual class members have virtually no interest in individually controlling the prosecution of separate actions." In re Hannaford Bros., 293 F.R.D. 21, 33–34 (D. Me. 2013). In addition, no forum concerns have been brought to my attention, and there is no evidence that this action will be more difficult to manage than any other class action. Consequently, given the large number of potential class members and the small value of individual claims, "not only is a class action the superior method of resolving this case, it is the very sort of case for which the Rule 23(b)(3) class action mechanism was intended." In re Dial, 312 F.R.D. at 57.

## IV.  CONCLUSION

In summary, Clough has standing to sue and the proposed class satisfies the requirements of Rule 23.  Accordingly, Clough's motion for class certification (Doc. No. 91) is granted.  Clough is appointed as lead plaintiff and his counsel as lead counsel.

SO ORDERED.

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

June 19, 2019

cc:  Alex M. Washkowitz, Esq.
     Edward A. Broderick, Esq.
     Jeremy A. Cohen, Esq.
     Matthew P. McCue, Esq.
     Roger B. Phillips, Esq.
     Ari N. Rothman, Esq.
     Daniel S. Blynn, Esq.
     Justin B. Nemeroff, Esq.
     Shahin O. Rothermel, Esq.
     Arnold Rosenblatt, Esq.
     Kathleen M. Mahan, Esq.