# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ROBERT W. CLOUGH, II., individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REVENUE FRONTIER, LLC, SUPREME DATA CONNECTIONS, LLC and WILLIAM ADOMANIS,<br><br>Defendants. | Case No. 1:17-cv-00411-PB |

### PLAINTIFF ROBERT W. CLOUGH, II's MOTION FOR ATTORNEY'S FEES, EXPENSES AND AN INCENTIVE AWARD

On March 20, 2020, this Court granted preliminary approval of the proposed settlement and instructed counsel for Plaintiff Robert W. Clough, II ("Plaintiff") to submit a motion for the approval of attorneys' fees and expenses by June 10, 2020. ECF. 127. As compensation for over two years of contingent litigation, Plaintiff's counsel requests an award of attorneys' fees of $700,000 (one-third of the $2,100,000 common fund) and $50,894.49 in expenses and submit that the request is fair and reasonable. Class Counsel also petition the Court to award the Plaintiff an incentive award of $25,000 to compensate him for his work on behalf of the class. Plaintiff requests that ruling on this motion be deferred until the Court's final approval hearing which is set for September 9, 2020 at 2 p.m. to allow class members to be heard should they wish to do so.

**I.     BACKGROUND OF THE CASE AND WORK PERFORMED**

This case rests on alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, initiating any telephone solicitation to a cell phone using an ATDS or an artificial or prerecorded voice. *See* 47 U.S.C. § 227(b). The TCPA's prohibition against auto dialed calls applies to both voice calls and text messages. *See Murphy v. DCI Biologicals Orlando, LLC,* 797 F.3d 1302, 1305 (11th Cir. 2015) (citing In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003)). The TCPA provides a private cause of action to persons who receive such calls or texts. *Id.*

On September 13, 2017, Plaintiff filed a lawsuit against Revenue Frontier and National Tax Experts, LLC in the United States District Court for the District of New Hampshire, Case No. 1:17-cv-00411-PB. On December 1, 2017, Plaintiff filed a First Amended Class Action Complaint dropping National Tax Experts, LLC as a defendant and adding U.E.G. Incorporated, Supreme Data and Adomanis as defendants (Dkt. No. 18).[1] Plaintiff alleged that Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by causing unsolicited text messages to be sent to the cellular telephone numbers of Plaintiff and others using an automatic telephone dialing system. Plaintiff further alleged that Revenue Frontier is vicariously liable for those text messages.

On May 2, 2018, Revenue Frontier filed a cross-claim against Supreme Data and Adomanis, and a counterclaim against Plaintiff (Dkt. No. 69). On June 22, 2018, Revenue Frontier filed an Amended Counterclaim against Plaintiff (Dkt. No. 78). On September 26, 2018, the Court

---

[1] Plaintiff subsequently voluntarily dismissed U.E.G. Incorporated as a defendant without prejudice due to an inability to serve process (Dkt. 74).

granted Plaintiff's motion to dismiss Revenue Frontier's counterclaim and dismissed said counterclaim without prejudice (September 26, 2018 Minute Entry and Oral Order).

On January 9, 2019, Plaintiff filed a Revised Second Amended Class Action Complaint against Revenue Frontier, Supreme Data, and Adomanis (Dkt. No. 88). On March 5, 2019, Plaintiff, on behalf of himself and the class he sought to represent and certify, demanded payment from Revenue Frontier, Revenue Frontier's insurance carrier (AXA Insurance Company), and W4 for the TCPA claims alleged in the Litigation.

On June 19, 2019, the Court, over Revenue Frontier's objection, granted Plaintiff's motion for class certification, and certified the following class:

> (1) All persons in the United States who are the users or subscribers of the approximately 18,937 cellular telephones identified in Anya Verkovshkaya's report (2) to which cellular telephone numbers a text message was sent (3) using the SDC Messaging Application, employing the Sendroid software (4) within four years of the filing of the complaint.

(Dkt. No. 115.)

The Litigation has been actively litigated for well over two years.  Plaintiff's claims survived Revenue Frontier's motions to dismiss, and the parties engaged in discovery and expert discovery, taking multiple depositions Florida, Nevada and Massachusetts. Plaintiff successfully moved for class certification. *Declaration of Edward Broderick* ¶ 7.  ("*Broderick Dec.*")

This Settlement was achieved over the course of three mediations, complicated by contributions from multiple parties and insurers. *Broderick Dec.* ¶¶ 4-5. On July 24, 2019, the Parties engaged in a day-long, in-person mediation session with Peter K. Rosen, Esq., a mediator with JAMS ADR in Los Angeles, California, but were unable to reach a settlement. *Id.*. The Parties, however, agreed to a second mediation to allow further assessment by Revenue Frontier's insurer and W4's insurers. *Id.*

On September 5, 2019 the Parties engaged in a second mediation, again with Mr. Rosen, in New York City. The Parties made some progress but did not reach a settlement. The Parties thereafter continued to negotiate through counsel, and agreed to a third mediation between the Parties, and the insurers of the Defendants and W4. That third mediation was held on October 16, 2019, again with Mr. Rosen, between the Parties and insurers. At this third mediation, a settlement in principle was reached. *Id.*

Defendants and W4 always denied liability and continue to do so. *Id.* ¶ 6. Defendants and W4 maintain that they have substantial factual and legal defenses to all claims and class allegations in the Litigation. *Id.* Defendants and W4 specifically deny that any automated dialers were used to text or call Plaintiff or class members without their prior express written consent; that they violated the TCPA; and that Plaintiff and class members are entitled to any relief. *Id.* Defendants and W4 further contend that the allegations contained in the Revised Second Amended Complaint are not amenable to class certification and should be decertified. Revenue Frontier expressly denies that it is vicariously liable for any alleged conduct by the other Defendants and W4. *Id.* The settlement was reached in spite of a vigorous defense raised by skilled counsel. Plaintiff and Class Counsel respectfully submit that they should be compensated for the outstanding result reached here.

## ARGUMENT

**A.    Plaintiff's Counsel Are Entitled To An Award From the Common Fund On A Percentage Basis.**

The U.S. Supreme Court and the First Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza*

*Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 265 (D.N.H. 2007) (Barbadoro, J.); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997).

As this Court has held, awards of reasonable attorneys' fees from a "common fund" spread the costs of the litigation "proportionately among those benefitted by the suit" and provide compensation that "encourages capable plaintiffs' attorneys to aggressively litigate complex, risky cases like this one" *Tyco*, 535 F. Supp. 2d at 265. In approving attorneys' fees in TCPA class actions courts hold that the percentage of the fund reflects the "market rate" because "given the opportunity … class members and Plaintiff's counsel would have bargained for" such. *See Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12-4069, 2017 WL 1369741, at *2, 9 (N.D. Ill. Apr. 10, 2017) (using percentage-of-the-fund method in TCPA case and declining to engage in lodestar analysis); *Wright v. Nationstar Mortg. LLC*, No. 14-1045, 2016 WL 4505169, *17 (N.D. Ill. Aug. 26, 2016) (same); *In re Capital One Tel. Consumer Prot. Act Litig.* ("*In re Capital One*"), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate" in TCPA case, and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions"). Notably, this case involves a relatively small class involving 18,937 cellular telephone numbers and as such is not a "super mega-fund" case dictating a lower percentage award to avoid a windfall. *See Tyco*, 535 F. Supp. 2d at 266-267 (awarding requested 14.5% of $3.2 billion settlement and lodestar multiplier of 2.697 and noting it was on the lowest multiplier of mega-fund settlements awarded).

In TCPA cases, awards of one-third of the entire settlement fund are commonplace. *See Martin v. Dun & Bradstreet, Inc.*, No. 12-215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (one-third of total payout); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. No. 87) (awarding attorneys' fees of one-third of total settlement fund); *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (one-third of the settlement fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (Dkt. No. 116) (fees equal to one-third of the settlement fund plus expenses); *CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-5456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (fees equal to one-third of settlement plus expenses); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09-776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Dkt. No. 100) (fees and expenses equal to 33% of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146) (fees of one-third of settlement plus expenses); *Hinman v. M&M Rentals, Inc.*, No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) (fees and expenses equal to 33% of the fund); *Holtzman v. CCH*, No. 07-7033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-66 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (same).

In this case, Plaintiff's Counsel seek an award of attorneys' fees of $700,000 (one-third of the $2,100,000 common fund). Such an award reflects the market rate for such work and should be approved as fair and reasonable.

**B. The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method**

In the First Circuit, "[t]he lodestar approach (reasonable hours spent times reasonable hourly rates, subject to a multiplier or discount for special circumstances, plus reasonable disbursements) can be a check or validation of the appropriateness of the percentage of funds fee,

but is not required." *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148-PBS, 2009 WL 2408560, at *1 (D. Mass. Aug. 3, 2009) (citation omitted); *accord Thirteen Appeals*, 56 F.3d at 307; *Lupron*, 2005 WL 2006833, at *3; *Relafen*, 231 F.R.D. at 81; *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.122, at 193 (2004) ("the lodestar is . . . useful as a cross-check on the percentage method by estimating the number of hours spent on the litigation and the hourly rate, using affidavits and other information provided by the fee applicant. The total lodestar estimate is then divided into the proposed fee calculated under the percentage method. The resulting figure represents the lodestar multiplier to compare to multipliers in other cases."). When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *Tyco*, 535 F. Supp. 2d at 270 (quoting *Thirteen Appeals*, 56 F.3d at 307); *see also In re WorldCom Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("Where the lodestar fee is used as 'a mere cross-check' to the percentage method of determining reasonable attorneys' fees, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'").

Here, Plaintiffs' Counsel spent 799.6 hours of attorney time prosecuting these claims. *See* Exhibits 1-4, *Broderick Dec.* ¶¶ 9, 11, *Declaration of Matthew P. McCue* ¶ 8*, Declaration of Roger B. Phillips* ¶ 5 *and Declaration of Alex M. Washkowitz* ¶ 4*.* When the billable rates of Class Counsel are calculated considering the time spent on the case, the total lodestar of class counsel is $487,045. *Id.* The multiplier required to reach the requested fee of $700,000 is approximately 1.437. *Broderick Dec.* ¶ 11. The rates requested are consistent with what counsel have been Court awarded Class Counsel in other TCPA class actions. *Broderick Dec.* ¶ 10 *and*

*McCue Dec.* ¶ 7; *see also Krakauer v. Dish Network, L.L.C.,* No. 1:14-CV-333, 2018 U.S. Dist. LEXIS 203725, at *16 (M.D.N.C. Dec. 3, 2018) (utilizing identical rates for McCue and Broderick time and confirming reasonableness of multiplier of 4.39 on hours expended).

### C. Other Factors To Assess When Determining The Reasonableness Of A Fee

Although the First Circuit has not set forth a comprehensive list of factors to be considered when evaluating an attorneys' fees request pursuant to the percentage-of-the-fund approach, other District Courts within this Circuit have assessed the reasonableness of proposed fees by considering the following factors, which track those used by the Second and Third Circuits in evaluating percentage fee awards:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any.

*See In re Puerto Rican Cabotage Antitrust Litig.,* 815 F. Supp. 2d 448, 458 (D.P.R. 2011). Consideration of all of these factors provides further confirmation that the fee requested here is reasonable. First, Class Counsel have achieved a common fund settlement of $2,100,000 that will be distributed to class members with known addresses without the need to file claims and there is a claims process for the small subset of class members whose addresses are not known. Second, as detailed in the attached Declarations, Class Counsel in this case have extensive experience litigating TCPA class actions nationwide. The Court may also note from the docket that this case has been handled in a professional and expeditious manner. Third, as the Court may gleam from the class certification pleadings, the issues in this case were complex and were the subjects of extensive discovery. Fourth, TCPA class actions are always risky. As with most class actions, this case is complex. Absent settlement, litigation could likely continue for years before

Plaintiffs would see any recovery. That a settlement would eliminate the delay and expenses strongly militates in favor of approval. *See Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). Although Plaintiff here believes that he would ultimately prevail on the merits at trial, success is far from assured. If approved, the Settlement would bring a sure end to what would be contentious and costly litigation with substantial risk. One of those risks focuses on the question of whether the dialing system, which Plaintiff contends is a predictive dialer, is an "Automatic Telephone Dialing System" under the TCPA. As an initial matter, on July 10, 2015, the FCC released an omnibus declaratory ruling clarifying numerous relevant issues affecting the TCPA, including definition of an ATDS under the statute[2]—which was overturned in part in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). Following the D.C. Circuit's decision in *ACA Int'l* courts have been split on what constitutes an ATDS under the TCPA.

Many courts have held that predictive dialers do not qualify as an ATDS. For example, in *Pinkus v. Sirius XM Radio, Inc.*, No. 16 C 10858, 2018 U.S. Dist. LEXIS 125043 (N.D. Ill. July 26, 2018) the Court held that an ATDS must generate random numbers to be called:

> As relevant here, the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] ... to any telephone number assigned to a ... cellular telephone service ... ." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*...
>
> *ACA International* did not itself articulate a definitive view of which functions characterize an ATDS. *See* 885 F.3d at 703 (noting that "[i]t might be permissible" for the FCC to conclude *either* that a device can "qualify as an ATDS only if it can generate random or sequential numbers to be dialed" *or* that it can "so qualify even if lacks that capacity"). Given this, the parties' dispute can be reduced to the question whether a predictive dialing device that calls telephone numbers from a stored list of numbers—rather than having generated those numbers either randomly or sequentially—satisfies the statutory definition of ATDS.

---

[2] *See* https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf.

> So, the phrase "using a random or sequential number generator" necessarily conveys that an ATDS must have the capacity to generate telephone phone numbers, either randomly or sequentially, and then to dial those numbers. *See Dominguez v. Yahoo, Inc.*, 629 F. App'x 369, 372 (3d Cir. 2015) (holding that "'random or sequential' number generation ... refers to the numbers themselves rather than the manner in which they are dialed"). This interpretation finds support in the FCC's pre-2003 understanding of the statutory term ATDS. The 1992 Order expressed the view that "[t]he prohibitions of § 227(b)(1)"—which, as noted, make it unlawful to use an ATDS under certain conditions—"clearly do not apply to functions like 'speed dialing,' 'call forwarding,' or public telephone delayed message services (PTDMS), because the numbers called are not generated in a random or sequential fashion." 7 FCC Rcd. 8752, 8776 ¶ 47. And in a follow-on 1995 ruling, the Commission described "calls dialed to numbers generated randomly or in sequence" as "autodialed." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12400 ¶ 19 (1995). The FCC's pre-2003 understanding of § FCC(a)(1) thus reinforces what its plain text shows—that equipment qualifies as an ATDS only if it has the capacity to function ... by generating random or sequential telephone numbers and dialing those numbers.

*Pinkus* at *4, 29-31 (N.D. Ill. July 26, 2018). The Third Circuit Court of Appeals adopted a similar stance in *Dominguez v. Yahoo, Inc.*:

> The decision in *ACA International* has narrowed the scope of this appeal. In light of the D.C. Circuit's holding, we interpret the statutory definition of an autodialer as we did prior to the issuance of 2015 Declaratory Ruling. Dominguez can no longer rely on his argument that the Email SMS Service had the latent or potential capacity to function as autodialer. The only remaining question, then, is whether Dominguez provided evidence to show that the Email SMS Service had the present capacity to function as [an] autodialer…
>
> Ultimately, Dominguez cannot point to any evidence that creates a genuine dispute of fact as to whether the Email SMS Service had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers. On the contrary, the record indicates that the Email SMS Service sent messages only to numbers that had been individually and manually inputted into its system by a user. There can be little doubt that Dominguez suffered great annoyance as a result of the unwanted text messages. But those messages were sent precisely because the prior owner of Dominguez's telephone number had affirmatively opted to receive them, not because of random number generation. The TCPA's prohibition on autodialers is therefore not the proper means of redress.

*Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119, 121 (3d Cir. 2018). The Second Circuit seems to

agree with the Third Circuit in *King v. Time Warner Cable Inc.*, 894 F.3d 473, n.5 (2d Cir. 2018), although *King* remanded the ATDS issue to the District Court for further factual findings. It is undisputed that the dialing system used in this case does not "create" or generate the telephone numbers it dials out of thin air. Instead, it takes the telephone numbers that Defendant has purchased and generates a sequence of phone numbers for calls that is carried out when Defendant's telemarketers execute a computer command to begin the texting campaign.

If this Court were to agree with the Court in *Pinkus* or if the First Circuit Court of Appeals were to adopt the approach of the Third Circuit Court of Appeals, no one, including the Plaintiff, would have been able to recover anything at all. Other courts have adopted the same position as the Third Circuit Court of Appeals. *See e.g. Glasser, v. Hilton Grand Vacations Company, LLC*, No. 8:16-CV-952-JDW-AAS, 2018 WL 4565751 (M.D. Fla. Sept. 24, 2018)*; Marshall v. CBE Group, Inc.*, Case No. 2:16-cv-02046-GMN, 2018 WL 1567852 (D. Nev. Mar. 30, 2018); *Herrick v. GoDaddy.com LLC*, No. CV-16-00254-PHX-DJH, 2018 WL 2229131 (D. Ariz. May 14, 2018); *Gary v. TrueBlue, Inc.*, Case No. 17-cv-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018); *Keyes v. Ocwen Loan Servicing*, No. 17-cv-11492, 2018 U.S. Dist. LEXIS 138445, at *15 (E.D. Mich. Aug. 16, 2018).

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see*

*Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Moreover, the narrative of the Defendant's telemarketing compliance efforts could present a case for reduction of any damages awarded after trial and some courts have applied this principle in the TCPA context. For example, the Court explained in *Golan v. Veritas Entm't, LLC* before reducing the damages awarded in that TCPA class action lawsuit to $10 a call:

> Three courts have reduced damages awards in TCPA cases. In *Texas v. American Blastfax, Incorporated*, plaintiff, the state of Texas, brought suit against defendants, American Blastfax, Incorporated and two of its officers and directors. 164 F.Supp.2d 892, 894 (W.D. Tex. 2001). The district court held defendant Blastfax had violated the TCPA by sending unsolicited intrastate fax advertisements. *Id.* at 894. Defendants presented evidence the average cost of receiving an unwanted fax is seven cents per page. *Id.* at 900. Although it stated the TCPA provides for liquidated damages of $500 for each violation, the district court found it would be inequitable and unreasonable to award that amount for each violation. *Id.* Instead, the district court interpreted the provision as providing for "up to" $500 per violation. *Id.* The district court found a reasonable award was seven cents per violation, which it trebled because defendants' conduct was willful and knowing, for a total amount of $495,375…
>
> The next case which reduced damages for TCPA violations is *Maryland v. Universal Elections, Incorporated*, 862 F.Supp.2d 457 (D. Md. 2012). The state of Maryland brought a civil enforcement action against Universal Actions, Incorporated and two individuals, alleging defendants violated the TCPA by making 112,000 prerecorded telephone calls to residents on Election Day. *Id.* at 459. The district court found defendants violated the TCPA. *Id.* at 463-464. The base damages award could have been $34,000,000 and could have exceeded one hundred million dollars if trebled, because the violations were knowing. *Id.* at 464. The state of Maryland requested $10,424,550. *Id.* at 465. The district court awarded $1,000,000. *Id.* at 466. The district court reasoned "a $10 million penalty is disproportionate to the size of the company and the defendants' presumptive ability to pay." *Id.*
>
> The third case is *United States v. Dish Network, LLC*, No. 09-3073, 256 F. Supp. 3d 810, 2017 U.S. Dist. LEXIS 85543, 2017 WL 2427297 (C.D. Ill. Jun. 5, 2017). Plaintiffs, the United States and the States of California, Illinois, North Carolina,

> and Ohio, alleged defendant, Dish Network, LLC, violated the TCPA, as well as several state laws and regulations, by placing telephone calls to telephone numbers on the do-not-call list. 2017 U.S. Dist. LEXIS 85543, [WL]at *1. After a bench trial, the Central District of Illinois entered judgment in favor of the plaintiffs and against the defendant. *Id.* Plaintiffs asked for a damages award of $2.1 billion. 2017 U.S. Dist. LEXIS 85543, [WL] at *139. The district court awarded civil penalties and statutory damages of $280,000,000, approximately 20 percent of the defendant's after-tax profits for 2016, finding this amount was "appropriate and constitutionally proportionate, reasonable, and consistent with due process." *Id.* The district court further reasoned "[t]he amount represents a significant penalty for the millions and millions of Do-Not-Call violations caused by Dish over years and years of careless and reckless conduct." *Id.* Finally, the district court stated "[t]he injury to consumers, the disregard for the law, and the steadfast refusal to accept responsibility require a significant and substantial monetary award."

*Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 144501, at *6-9 (E.D. Mo. Sep. 7, 2017).

Fifth, the hundreds of hours spent by class counsel litigating this case is set forth in the Declarations of Class Counsel. Sixth, the amount of anticipated recovery per class member is consistent with other TCPA cases. Finally, public policy considerations support the requested award as Class Counsel would not be able to enforce the TCPA on behalf of their clients if they were not compensated fairly for their work.

### D. The Expenses Incurred By Class Counsel Were Reasonable

In addition to an award of attorneys' fees, Class Counsel petition the Court to be reimbursed for litigation expenses incurred in the prosecution of the claims. These expenses are properly recoverable. *See In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund . . . expenses, reasonable in amount, that were necessary to bring the action to a climax"); *Latorraca v. Centennial Tech., Inc.*, 834 F. Supp. 2d 25, 28 (D. Mass 2011) ("In addition to attorneys' fees, lawyers who recover a common fund for a class are entitled to reimbursement of out-of-pocket expenses incurred during the

litigation."). Here, the modest request of $50,894.49 were related to deposition transcripts, electronic production processing, filing fees, travel expenses and mediator fees for three mediations.

### E. Mr. Clough Is Entitled To An Incentive Award

Federal courts often exercise their discretion under Rule 23(d) and (e) to approve case contribution awards to plaintiffs who instituted and prosecuted actions on the theory that there would be no class-wide benefit absent their suits. These awards recognize the burdens assumed by plaintiff litigants in instituting and prosecuting the actions, the time spent by plaintiffs on communicating with counsel and fulfilling class responsibilities of supervision, and the risks that plaintiffs bear in bringing the suit. For example, in *Cook v. Niedert,* 142 F.3d 1004 (7th Cir. 1998), the Seventh Circuit Court of Appeals awarded the class representative $25,000 and recognized that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Id.* at 1016. *See also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) ("incentive awards are justified when necessary to induce individuals to become named representatives"). *See Spicer v. Chicago Bd. Options Ex., Inc.*, 844 F. Supp. 1226, 1267-1268 (N.D. Ill. 1993) (collecting cases awarding incentive fees ranging from $5,000 to $100,000; awarding $10,000 each to named plaintiffs). Incentive awards to class plaintiffs in TCPA cases are the norm. *See Benzion v. Vivint, Inc.*, No. 12- 61826 (S.D. Fla. Feb. 23, 2015) (Dkt. No. 201) (approving $20,000 incentive award to named plaintiff in TCPA action); *Martin v. Dun & Bradstreet, Inc.*, No. 12-00215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 66) (awarding $20,000 incentive award to named plaintiff in TCPA action); *Hanley v. Fifth Third Bank*, No. 12-01612 (N.D. Ill. Dec. 23, 2013) (Dkt. No. 86) (awarding named plaintiff a $25,000 incentive award in TCPA action);

*Desai v. ADT Sec. Servs., Inc.*, No. 11-01925 (N.D. Ill. June 21, 2013) (Dkt. No. 243) (approving incentive awards of $30,000 each to two named plaintiffs in action); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 07-05456 (N.D. Ill. Oct. 27, 2011) (Dkt. No. 424) ($25,000 incentive award in TCPA action).

Mr. Clough has served as an exemplary representative plaintiff in this case and should be fairly compensated for his efforts. At all times, Mr. Clough was involved in the prosecution of this case. He spent a significant amount of time responding to discovery requests, compiling responsive documents and sitting for a full day deposition. Mr. Clough was also named in a counterclaim for fraud, which he successfully moved to have dismissed for failure to state a claim. Mr. Clough served the class well and is entitled to a $25,000 incentive award to recognize him for his time and effort spent on behalf of the class.

## **CONCLUSION**

For the reasons set forth above, the request of Class Counsel for attorneys' fees in the amount of $700,000 (one-third of the $2,100,000 common fund) should be GRANTED.  The request of Class Counsel for the reimbursement of litigation expenses in the amount of $50,894.49 should also be GRANTED.  Finally, Plaintiffs requests that Mr. Clough be awarded a $25,000 incentive award should be GRANTED. Plaintiff asks that ruling on this motion be deferred until the Court's final approval hearing which is set for September 9, 2020 at 2 p.m. to allow class members to be heard should they wish to do so.

Plaintiff,
By Counsel,

*/s/ Edward A. Broderick*
Edward A. Broderick
Broderick Law, P.C.
99 High St., Suite 304
Boston, MA 02110
(617) 738-7080
ted@broderick-law.com

Roger B. Phillips, (Bar. No.2018)
Phillips Law Office, PLLC
104 Pleasant Street
Concord, NH 03301
(603) 225-2767 (ph)
(603) 226-3581 (fax)
roger@phillipslawoffice.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
mmccue@massattorneys.net

Alex M. Washkowitz
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 10, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send notification to all attorneys of record.

                                        */s/ Edward A. Broderick*
                                          Edward A. Broderick