**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| ROBERT W. CLOUGH, II., individually and on behalf of a class of all persons and entities similarly situated, | ) ) ) | |
| | ) | Case No. 1:17-cv-00411-PB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| REVENUE FRONTIER, LLC, SUPREME DATA CONNECTIONS, LLC and WILLIAM ADOMANIS, | ) ) ) | |
| Defendants. | | |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS**
**ACTION SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     NATURE AND BACKGROUND OF THE CASE .............................................2

III.    THE PROPOSED SETTLEMENT .....................................................................5

        A.      Settlement Administration ......................................................................5

        B.      Response of the Class ..............................................................................7

IV.     THE SETTLEMENT MEETS ALL REQUIREMENTS FOR FINAL APPROVAL.........7

                1.      The Class Representatives and Class Counsel Have Adequately
                        Represented the Class. ..................................................................8

                2.      The Settlement Was Negotiated at Arm's-Length, and There Has
                        Been No Fraud or Collusion. ........................................................9

                3.      The Settlement Provides Substantial Relief for the Class ..........9

                4.      Diverse and Substantial Legal and Factual Risks Weigh in Favor of
                        Settlement. ..................................................................................10

                5.      The Monetary Terms of this Proposed Settlement Compare Favorably
                        with Prior TCPA Class Action Settlements. ..............................13

                6.      The Settlement is an Effective and Equitable Means of Distributing
                        Relief to the Settlement Class. ...................................................13

                7.      The Terms of a Proposed Award of Attorneys' Fees. ...............14

                8.      There is no Agreement that Would be Required to be Identified under
                        Rule 23(e)(3) ...............................................................................14

                9.      The Form and Manner of Notice Complied with Rule 23 and Due
                        Process ........................................................................................14

## I.      INTRODUCTION

Plaintiff Robert W. Clough, II ("Plaintiff") on behalf of himself and all Settlement Class Members moves for final approval of his settlement with defendants Revenue Frontier, LLC ("Revenue Frontier"), Supreme Data Connections, LLC ("Supreme Data"), and William Adomanis ("Adomanis") (collectively "Defendants"); and W4, LLC ("W4") in this class action brought under the Telephone Consumer Protection Act. Plaintiff additionally asks that his separately filed Motion for Attorneys' Fees, Expenses and an Incentive Award [ECF 128] be granted.[1] Plaintiff, Defendants and W4 are referred to collectively in this Settlement Agreement as the "Parties."[2] The Settlement includes the establishment of an $2,100,000 Settlement Fund to be distributed to Settlement Class Members without the need to file claim forms, and to cover Plaintiff's Counsel fees and costs, and an incentive award to the Plaintiff.[3] There is no reverter to the Defendants of any portion of the Settlement Fund.

The Notice Plan approved by the Court has been implemented by the parties and the Court-approved Settlement Administrator, AB Data, Ltd. The Postcard Notice was successfully delivered to in excess of 83% of the Settlement Class Members. The reaction of the Settlement Class has been positive. There are no objections to the Settlement, nor was there a single opt out. In addition, following direct notice under Class Action Fairness Act to each state attorney general's office, no state attorney general, nor the Attorney General of the United States, has objected.

---

[1] By Endorsed Order dated June 25, 2020, the Court deferred ruling on Plaintiff's Motion for Attorneys' Fees until after the Final Approval Hearing, set for September 9, 2020 at 2:00 p.m.

[2] The Defendants and W4 do not oppose this motion insofar as they support the settlement. The Defendants and W4 do not concede or admit Plaintiff's assertions.

[3] All capitalized terms not defined herein have the meanings set forth in the Parties' Class Action Settlement Agreement ("Settlement" or "Agreement"), filed with the Court as ECF 125-1.

As is reflected in the Declaration of Eric Nordskog Re: Notice Procedures submitted herewith as Exhibit 1, assuming deductions are approved from the $2,100,000 Settlement Fund for (a) attorneys' fees ($700,000.00); (b) attorneys' costs ($50,894.49); (c) named plaintiff award ($25,000.00); and (d) administration costs ($83,000.00) the distribution on a *pro rata* basis to eligible Settlement Class Members is estimated to be $78.88. *Declaration of Eric Nordskog* ¶ 15. As is set forth below, this payout compares favorably with other settlements under the Telephone Consumer Protection Act ("TCPA"). Plaintiff respectfully submits that the relief provided meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation. Plaintiff respectfully requests that the Court grant final approval of the Settlement.

## II.    NATURE AND BACKGROUND OF THE CASE

This case rests on alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, initiating any telephone solicitation to a cell phone using an ATDS or an artificial or prerecorded voice without prior express consent. *See* 47 U.S.C. § 227(b). The TCPA's prohibition against auto dialed calls applies to both voice calls and text messages. *See Murphy v. DCI Biologicals Orlando, LLC,* 797 F.3d 1302, 1305 (11th Cir. 2015) (citing In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003)).  The TCPA provides a private cause of action to persons who receive such calls or texts. *Id.*

Plaintiff is an individual residing in New Hampshire whose cellular telephone number has been called with unsolicited messages for years. On September 13, 2017, Plaintiff filed a lawsuit against Revenue Frontier and National Tax Experts, LLC in the United States District Court for the District of New Hampshire, Case No. 1:17-cv-00411-PB.  On December 1, 2017, Plaintiff filed a First Amended Class Action Complaint dropping National Tax Experts, LLC as a defendant and

adding U.E.G. Incorporated, Supreme Data and Adomanis as defendants (ECF 18).[4]  Plaintiff alleged that Defendants violated the TCPA, 47 U.S.C. § 227, by causing unsolicited text messages to be sent to the cellular telephone numbers of Plaintiff and others using an automatic telephone dialing system.  Plaintiff further alleged that Revenue Frontier is vicariously liable for those text messages.

On May 2, 2018, Revenue Frontier filed a cross-claim against Supreme Data and Adomanis, and a counterclaim against Plaintiff (ECF 69).  On June 22, 2018, Revenue Frontier filed an Amended Counterclaim against Plaintiff (ECF 78). On September 26, 2018, the Court granted Plaintiff's motion to dismiss Revenue Frontier's counterclaim and dismissed said counterclaim without prejudice (September 26, 2018 Minute Entry and Oral Order).

On January 9, 2019, Plaintiff filed a Revised Second Amended Class Action Complaint against Revenue Frontier, Supreme Data, and Adomanis (ECF 88). On March 5, 2019, Plaintiff, on behalf of himself and the class he sought to represent and certify, demanded payment from Revenue Frontier, Revenue Frontier's insurance carrier (AXA Insurance Company), and W4 for the TCPA claims alleged in the Litigation.

On June 19, 2019, the Court, over Revenue Frontier's objection, granted Plaintiff's motion for class certification, and certified the following class (which is identical to the Settlement Class):

> (1) All persons in the United States who are the users or subscribers of the approximately 18,937 cellular telephones identified in Anya Verkovshkaya's report (2) to which cellular telephone numbers a text message was sent (3) using the SDC Messaging Application, employing the Sendroid software (4) within four years of the filing of the complaint.

(ECF 115).

---

[4] Plaintiff subsequently voluntarily dismissed U.E.G. Incorporated as a defendant without prejudice due to an inability to serve process (ECF 74).

This case has been actively litigated.  Plaintiff's claims survived Revenue Frontier's motion to dismiss, and the parties engaged in discovery and expert discovery, taking multiple depositions, and litigated class certification challenges.

This Settlement was achieved over the course of three mediations, complicated by contributions from multiple parties and insurers. *Declaration of Edward Broderick* ¶ 7 (Exhibit 2 submitted herewith). On July 24, 2019, the Parties engaged in a day-long, in-person mediation session with Peter K. Rosen, Esq., a mediator with JAMS ADR in Los Angeles, California, but were unable to reach a settlement. *Id*. The Parties, however, agreed to a second mediation to allow further assessment by Revenue Frontier's insurer and W4's insurers. *Id.* ¶ 8.

On September 5, 2019 the Parties engaged in a second mediation, again with Mr. Rosen, in New York City. The Parties made some progress but did not reach a settlement. The Parties thereafter continued to negotiate through counsel, and agreed to a third mediation between the Parties, and the insurers of Revenue Frontier and W4. That third mediation was held on October 16, 2019, again with Mr. Rosen, between the Parties and insurers.  At this third mediation, a settlement in principle was reached. *Id.*

Defendants and W4 always denied liability and continue to do so.  *Id.* ¶ 9. Defendants and W4 maintain that they have substantial factual and legal defenses to all claims and class allegations in the Litigation.  *Id.* Defendants and W4 specifically deny that any automated dialers were used to text or call Plaintiff or class members without their prior express written consent; that they violated the TCPA; and that Plaintiff and class members are entitled to any relief.  *Id.* Defendants and W4 further contend that the allegations contained in the Revised Second Amended Complaint are not amenable to class certification.  Revenue Frontier expressly denies that it is vicariously liable for any alleged conduct by the other Defendants and W4.  *Id.* Nevertheless, without

admitting any liability or wrongdoing whatsoever, Defendants and W4 agreed to the terms of the Settlement solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation and to resolve all issues relating to the subject matter of the Released Claims (as defined in the Settlement) in the Litigation.

### III.     THE PROPOSED SETTLEMENT

The proposed Settlement establishes a non-reversionary $2,100,000.00 Settlement Fund, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members; (2) Settlement Administration Expenses; (3) court-approved attorney's fees of one-third of the total amount of the Settlement Fund, in addition to out of pocket expenses; and (4) a court-approved incentive award to the Class Representative of up to $25,000. (Agreement ¶2.23 and ¶16.3). Each of the 15,733 Settlement Class Members with a known address, if all Settlement Administrative Expenses, Incentive Awards, and Fee awards are approved by the Court and paid out of the Settlement Fund, will received an estimated *pro rata* payment of approximately $78.88. *Declaration of Eric Nordskog* ¶ 15.

### A.     Settlement Administration.

On February 19, 2019, after the Parties complied with the Court's order directing the parties to meet and confer and agree on a proposed administrator, to set forth the proposed administrator's qualifications and to agree on a schedule (filed at ECF 126), this Court granted preliminary approval to the settlement. (ECF. 127). As part of the Court's order, AB Data, Ltd. ("AB Data") was appointed as the Settlement Administrator. AB Data took the list of 18,938 lines of non-deduped data which included phone numbers of potential Settlement Class Members (the "Class List") from the Expert Report of Plaintiff's Expert, Anya Verkhovskaya. *Declaration of Eric Nordskog* ¶ 4. A.B. Data facilitated, through a third-party information provider, reverse directory searches of the 18,938 telephone numbers on the Class List, which provided names and

addresses for 16,977 records. A.B. Data then created a list of the 16,977 unique names and mailing addresses of Class Members (the "Mailing List"). *Id.* ¶ 5. A.B. Data then processed the Mailing List through the United States Postal Service's ("USPS") National Change of Address Database ("NCOA") to standardize the format of the addresses and to update the mailing addresses with any moves registered with the USPS. *Id.* ¶ 6.

On May 11, 2020, A.B. Data caused the Court-approved mailed Settlement Notice ("Mail Notice") to be printed and mailed to the 16,977 names and mailing addresses on the Mailing List. A true and correct copy of the Mail Notice is attached to Mr. Nordskog's Declaration as Exhibit C. *Id.* ¶ 7. Since sending the Mail Notices to the Settlement Class Members, A.B. Data has received 2,159 Mail Notices returned by the USPS with undeliverable addresses. Through credit-bureau and/or other public-source databases, A.B. Data performed address searches for these undeliverable Mail Notices and was able to find updated addresses for 1,076 Settlement Class Members. Following the remailing of Mail Notices, 161 were returned once again as undeliverable. *Id.* ¶ 8. Altogether, individual notice was successfully sent to 15,733 Settlement Class Members (in excess of 83%) without a returned notice being received. There are 3,205 Settlement Class Members (less than 17%) for whom new mailing addresses have not been found. *Id.* ¶ 9. AB Data additionally established a class action website and set up a toll-free number to answer class inquiries that received or returned 229 calls. *Id.* ¶¶ 10-11.

Claim Forms were only required to be submitted by Settlement Class Members whose names were not on the Class List and thus were not mailed a Notice. The deadline for Settlement Class Members to submit a Claim Form was August 10, 2020. A.B. Data received a total of 33 claims. These 33 Claim Forms submitted are not eligible for a Cash Award, as 6 of the claims were unnecessarily submitted by Settlement Class Members on the Class List who were successfully

mailed a Notice, and the other 27 claims did not include a phone number that matched a phone number on the Class List. *Id.* ¶ 12.

        **B.**      **Response of the Class.**

There are no objections to this Settlement, and none of the Settlement Class Members opted out. A court may appropriately infer that a class settlement is fair, reasonable, and adequate when few (or no) class members object to it. *See Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2016 WL 1622881, at *8 (N.D. Cal. Apr. 25, 2016) (observing that "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members" (citation omitted)).

**IV.**      **THE SETTLEMENT MEETS ALL REQUIREMENTS FOR FINAL APPROVAL**

Under Fed. R. Civ. P. 23(e), a class action settlement agreement requires the court's approval. "A district court can approve a class action settlement only if it is fair, adequate and reasonable." *City P'shp. Co. v. Atlantic Acquisition*, 100 F.3d 1041, 1043 (1st Cir. 1996) (quoting *Durrett v. Housing Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990)). In considering final approval of a class action settlement, courts in the First Circuit consider the following list of factors in deciding whether to approve a settlement; (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *New England Carpenters Health Benefits Fund v. First Databank, Inc.,* 602 F. Supp. 2d 277, 281 (D. Mass. 2009).

Similarly, Rule 23, as revised as of December 1, 2018, sets forth a list of overlapping points a court must consider in determining whether a proposed class action settlement is fair, reasonable, and adequate." *Snyder*, 2019 U.S. Dist. LEXIS 80926, at * 14.  These are:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Those factors are satisfied here.

### A.    The Class Representatives and Class Counsel Have Adequately Represented the Class.

In a class settlement context, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07-CV-2898, 09-CV- 2026, 2012 U.S. Dist. LEXIS 25265, at * 39 (N.D. Ill. Feb. 28, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). Previously, counsel for the class have submitted to the Court for its review their qualifications and a detailed disclosure of the course of this litigation through to final approval. In light of this history, counsel for the Plaintiff had a complete picture of the case, and did everything possible to get the best possible result for class members. On the basis of these efforts, the case was highly developed by class counsel, who are? experienced, competent, qualified and able to conduct the litigation vigorously. Plaintiff and his counsel believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the members of the class. Plaintiff also believes that the benefits of the Parties' Settlement far

outweigh the delay and considerable risk of proceeding to a contested class certification and trial.

### B.    The Settlement Was Negotiated at Arm's-Length, and There Has Been No Fraud or Collusion.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011).[5]  This Settlement was negotiated at arm's length by knowledgeable and experienced counsel over the course of three mediations with Peter Rosen, Esq., a nationally recognized mediator with particular experience in insurance coverage disputes, the first of which was in Los Angeles, California, with two following in New York City. *See Declaration of Edward A. Broderick*, attached as Exhibit 2 at ¶¶ 7-8. The nature of these mediation sessions, the experience of counsel as longstanding class-action attorneys, the involvement of a skilled mediator and the fair result reached are illustrative of the arm's-length negotiations that lead to the Settlement Agreement.

### C.    The Settlement Provides Substantial Relief for the Class.

Rule 23(e)(2)(C) and (D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." The relief this Settlement provides is meaningful and substantial relief, particularly given the facts and circumstances of this case. Under the Settlement, all Settlement Class Members will be treated equitably as each receives an identical *pro rata* distribution of the Settlement Fund.

---

[5] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

**D.    Diverse and Substantial Legal and Factual Risks Weigh in Favor of Settlement.**

The expense, complexity and duration of litigation are significant factors considered in evaluating the reasonableness of a settlement. Here, litigating the case through trial would undoubtedly be time-consuming and expensive. As with most class actions, this case is complex. Absent settlement, litigation could likely continue for years before Plaintiff would see any potential recovery. That a settlement would eliminate delay and expenses strongly militates in favor of approval. *See Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). Although Plaintiff here believes that he would ultimately prevail on the merits at trial, success is far from assured. If approved, the Settlement would bring a sure end to what would be contentious and costly litigation with substantial risk. One of those risks focuses on the question of whether Supreme Data Connections, LLC's dialing system, which Plaintiff contends is a predictive dialer, is an "Automatic Telephone Dialing System" under the TCPA. As an initial matter, on July 10, 2015, the FCC released an omnibus declaratory ruling clarifying numerous relevant issues affecting the TCPA, including the definition of an ATDS under the statute[6]—which was overturned in part in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). Following the D.C. Circuit's decision in *ACA Int'l*, courts have been split on what constitutes an ATDS under the TCPA.

Currently, the Third, Seventh, and Eleventh Circuit Courts of Appeal require number generation in order for technology to qualify as an ATDS. *See Gadelhak v. AT&T Services*, 950 F.3d 458 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations,* Case No., 948 F.3d 1301 (11th Cir. 2020); *Dominguez v. Yahoo*, 894 F.3d 116 (3d Cir. 2018). The Second, Sixth and Ninth Circuit Courts of Appeal, in contrast, have liberally construed the statutory text and do not require number

---

[6]        *See* https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf.

generation. *Duran v. La Boom Disco, Inc.*, 955 F.3d 279 (2d Cir. 2020); *Allan v. Pa. Higher Educ. Assistance Agency*, No. 19-2043, 2020 U.S. App. LEXIS 23935 (6th Cir. July 29, 2020); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018). Significantly raising the stakes in this litigation, since this Court's grant of preliminary approval in this case, the United States Supreme Court granted certiorari in another TCPA case, *Facebook, Inc. v. Duguid et al.*, No. 19-511 (cert. granted July 9, 2020) to address a question at the heart of a nationwide circuit split: "Whether the definition of [an automatic telephone dialing system] . . . encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" Supreme Court Case No. 19-511, Jul. 9, 2020 Order Granting Cert.

It is undisputed that the SDC Messaging Application using the Sendroid software used in this case does not "create" or generate the telephone numbers to which it sends texts out of thin air. Instead, it takes a list of telephone numbers and generates a sequence of phone numbers for texts that is carried out when Defendant's telemarketers execute a computer command to begin the texting campaign. The dialer then sends those texts.

If this Court (or the First Circuit Court of Appeals or the Supreme Court) were to adopt the number generation definition of an ATDS, the Settlement Class would recover nothing. This significant legal risk strongly supports final approval of the Settlement.

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although

authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Moreover, the narrative of the Defendants' telemarketing compliance efforts could present a case for reduction of any damages awarded after trial, and some courts have applied this principle in the TCPA context. *See Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 144501, at *6-9 (E.D. Mo. Sep. 7, 2017) (reducing the damages awarded in a TCPA class action lawsuit to $10 a call; and citing three other cases reducing damages for TCPA violations).

Aside from the litigation risks, defendants Adomanis and Supreme Data Connections, LLC made clear that they were without the financial means to pay a full judgment had this matter proceeded to trial and through appeal with a result favorable to the Plaintiff. The financial condition of a Defendant is an important factor in evaluating the fairness of a proposed settlement. *See e.g. Krimes v. JPMorgan Chase Bank, N.A.*, No. 15-5087, 2017 U.S. Dist. LEXIS 79434 * 23-25 (E.D. Pa. May 24, 2017) (recognizing financial inability of defendant to pay a larger judgment as a relevant factor for consideration on preliminary approval of a class action settlement). Revenue Frontier, although solvent, asserted its own defense that it could not be held vicariously liable for the actions of third parties that it denied acted as its agents.

By reaching this Settlement, the parties will avoid protracted litigation and will establish a means for prompt resolution of Class Members' claims. These avenues of relief provide a benefit to Class Members. Given the alternative of long and complex litigation before this Court, the risks

involved in such litigation, and the possibility of an appeal, the availability of prompt relief under the Settlement is highly beneficial to the Class.

> **E.     The Monetary Terms of this Proposed Settlement Compate Favorably with of Prior TCPA Class Action Settlements.**

As explained more fully in Section 5.1 of the Settlement, Revenue Frontier and W4 will surrender funds available to each of them under their respective insurance policies to pay $2,100,000 into a Settlement Fund. Class Members with known addresses will receive approximately $78.88, an amount exceeding comparable settlements.[7] The Settlement provides substantial relief to Class Members without delay, particularly in light of the above risks that Class Members would face in litigation.

> **F.     The Settlement is an Effective and Equitable Means of Distributing Relief to the Settlement Class.**

The Settlement treats each class member in precisely the same way. *See* Fed. R. Civ. P. 23(e)(2)(C) & (D) advisory committee's note (identifying, among potential "[m]atters of concern," whether "the scope of the release may affect class members in different ways that bear on the apportionment of relief"). Every class member with a known address will receive the exact same relief, in return for the exact same release as to Defendants and W4. No one was favored, disfavored, or otherwise treated differently from anyone else. Moreover, the overwhelmingly positive reaction of class members to the Settlement and its relief supports the fundamental equality and effectiveness of the Settlement. The distribution of relief is particularly simple in this case as the vast majority of Settlement Class Members did not need to submit a claim in order to

---

[7] *See, e.g.*, *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where each class member would be awarded $39.66); *Kolinek v. Walgreen, Co.*, 311 F.R.D 483, 493–94 (N.D. Ill. 2015) (granting final approval where class members each stood to receive $30).

share in the distribution to the Settlement Class.

### G.   The Terms of a Proposed Award of Attorneys' Fees.

The award of attorneys' fees and timing of payment are addressed in Plaintiff's Motion for Attorneys' Fees, Expenses and an Incentive Award, ECF 128. The Settlement Class Members, Class Counsel and Plaintiff as the Class Representative are all aligned. Payment will only be made once the Court enters a Final Approval Order and a Judgment, and the Settlement receives final approval from the Court and the "Final Settlement Date" is reached. *Settlement Agreement*, ECF 125-1, ¶ 2.22.

### H.   There is no Agreement that Would be Required to be Identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(iv) requires parties seeking final approval to disclose to the Court any "agreement required to be identified under Rule 23(e)(3)." The purpose of this provision is to ensure that there is not a "side agreement" between the Parties outside the scope of the Settlement for which approval is sought which could impact the adequacy of the settlement and relief secured. *See, e.g. Harvey v. Morgan Stanley Smith Barney LLC,* No. 18-cv-02835-WHO, 2020 U.S. Dist. LEXIS 37580, at *29 (N.D. Cal. Mar. 3, 2020). The parties have reached no such "side agreement." Exhibit 2 at ¶ 10.

### I.   The Form and Manner of Notice Complied with Rule 23 and Due Process.

Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974), *quoting, Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950*)*. Sending notice by first class mail to class members identifiable by reasonable means is regularly deemed adequate under Rule 23(c)(2).  *Reppert v. Marvin Lumber & Cedar Co., Inc.*, 359 F.3d 53, 56-57 (1st Cir.

2004). In this case, direct mail notice was successfully delivered to over 83% of the class. *See* Exhibit 1, *Declaration of Eric Nordskog*, ¶ 9. Such a percentage far exceeds established due process requirements for class notice. *See* Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), *available at* https://goo.gl/KTo1gB (instructing that notice should have an effective "reach" to its target audience of at least 70%.). In sum, the notice program in this case far exceeds the minimum due process requirements.

## CONCLUSION

Plaintiff respectfully submits that the settlement in this matter is an excellent result for class members, and the response from class members suggests that they agree. Plaintiff respectfully requests that the Court approve this unopposed request to approve the Settlement and enter a final judgment and order. A proposed Final Approval Order and a separate Judgment (previously attached to the Settlement Agreement as exhibits) are attached hereto as Exhibits 3 and 4.

Respectfully submitted for
Plaintiff Robert W. Clough, II,
By Counsel,

*/s/ Edward A. Broderick*
Edward A. Broderick
Broderick Law, P.C.
99 High St., Suite 304
Boston, MA 02110
(617) 738-7080
ted@broderick-law.com

Roger B. Phillips, (Bar. No.2018)
Phillips Law Office, PLLC
104 Pleasant Street
Concord, NH 03301
(603) 225-2767 (ph)
(603) 226-3581 (fax)
roger@phillipslawoffice.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
mmccue@massattorneys.net

Alex M. Washkowitz
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send notification to all attorneys of record.

*/s/ Edward A. Broderick*
Edward A. Broderick